UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MORRIS DAVENPORT, JR.                CIVIL ACTION NO. 14-cv-1092

VERSUS                                JUDGE HICKS

RONNY RICHARDSON                      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Morris Davenport, Jr. ("Petitioner") was charged with aggravated rape of the teenage daughter of his girlfriend. The State proceeded under a provision of the rape statute that required proof the sexual intercourse was deemed to be without lawful consent of the victim because a mental infirmity prevented her from resisting. The statute defined mental infirmity as "a person with an intelligence quotient of seventy or lower." La. R.S. 14:42.

The State called the director of special education and an educational diagnostician from the school board who testified about the victim's reduced abilities and her scores on tests used to evaluate students. At the close of the evidence, but before the case was submitted to the jury, the trial judge granted the defendant's motion for judgment of acquittal on the grounds that the State had not produced evidence of an intelligence quotient of 70 or lower, and he dismissed the jury. Several days later, the trial judge stated that he made a mistake when he granted the motion for acquittal. He then declared a mistrial based on the physical impossibility of proceeding after the jury had been released.

Petitioner raised a double jeopardy objection to a second trial. He presented the argument to a state appellate court, which agreed and held that the judicial acquittal barred a second trial. State v. Davenport, 116 S.3d 1038 (La. App. 3d Cir. 2013). The Supreme Court of Louisiana reversed, reasoning that the acquittal was ultra vires and void because Louisiana law does not allow a judge to enter a directed verdict in a criminal jury trial. State v. Davenport, 147 So.3d 137 (La. 2014). Petitioner, having exhausted his state court remedies, now seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241. For the reasons that follow, it is recommended that his petition be granted.

**State Court Proceedings**

### A. Prosecution Evidence

Petitioner had a long-term relationship with Christina Dowden, who is the mother of JW, the victim. The three of them lived together in a trailer in the Converse area. There was evidence that Petitioner and Ms. Dowden were heavy drinkers, often passed out from drinking, and were no strangers to domestic violence. JW did not like living with them and, on an occasion when she was with her grandmother, she went to a physician's office and requested birth control. A nurse testified that she questioned JW about why she wanted birth control, and JW told her that Petitioner, as well as his friend Vernon Mullins, had been "trying to stick his thing in [her]" and had been doing it for a while. She said she fought them off at first but gave up.

That led to an investigation, during which JW was questioned by a forensic interviewer with a children's advocacy center. JW was 17 and in the 10th grade at the time

of the interview. She said that Vernon Mullins was the first of the two to "mess with her" when she was 16 years old and her family was living at Mullins' house while their electricity was turned off. She also told the interviewer that she and Mullins had sex several times over the course of months. She said less about Petitioner, but she described one evening when Petitioner performed oral sex on her and attempted to engage in oral and other forms of intercourse.

JW was 19 by the time of trial. She testified that Petitioner came in her room one night, told her to pull her clothes off, and told her to perform oral sex on him. She did not, and he grabbed her by the head and forced her. He then performed oral sex on her.

Vernon Mullins testified as a witness for the State. He said he was at JW's home one evening, where he often visited, and fell asleep on the couch. When he awoke, he went to see where the others were, and he saw JW lying naked on her bed with Petitioner kneeling on the floor and performing oral sex on her. Petitioner confronted Mullins with a butcher knife but eventually put it down and drove Mullins home. Mullins testified that Petitioner told him "he was only doing that to see if I would do anything because he thought they'd been thinking for a year that something been going on" between Mullins and either JW or her mother. Mullins spoke to JW's mother about the incident the next day, but he did not call the police. Mullins, who testified in handcuffs, said he too had been charged with committing a crime against JW. He had hoped to receive a deal, but he had not received one in exchange for his trial testimony. He denied ever engaging in sexual activity with JW, but he admitted having sex with her mother behind Petitioner's back.

Christina Dowden, JW's mother, testified that JW slept in the same room with Mullins when they lived in his home, but she did not suspect there was anything inappropriate happening. She only became aware of a problem when Petitioner told her, after the incident described by Mullins, that something was going on and he did not like the way Mullins was acting. Dowden said Petitioner told her that Mullins kept going back to the child's bedroom, so he forced Mullins out of the house. Dowden said that JW later told her that Mullins had been "messing with her." She first said the child never told her anything about Petitioner. When pressed, she admitted telling the police that JW had reported both Mullins and Petitioner were "messing with her."

The director of special education for the local school board testified that JW had last been evaluated by the system in 2010, and she was found to be functioning academically as a seven to eight-year-old. The director said on cross-examination that no IQ test was performed because, "We do not do IQ tests in this district." An educational diagnostician with the school board testified that she performed the evaluation in 2010 when JW was 16 and in the eighth grade. She said she administered the Woodcock-Johnson Achievement Test that measures abilities in reading, math, oral expression, and other areas. JW's scores in, for example, oral language reflected an ability equivalent to seven years ten months. Other scores were similar. Her numerical scores in the various categories ranged from 48 to 69. Scores between 85 and 115 were considered average. Scores below 70 were considered significantly below average.

The diagnostician was asked if IQ tests were given to the student. She answered:

> We don't call it an IQ test. We call it a cognitive assessment and yes, we have to ... If my scores are all below 70, then I request a cognitive assessment for my school psychologist who then goes in and gives a cognitive test to the student.

The following exchange then occurred:

> Q. And was a cognitive test given in this case?
>
> A. Yes, it was.
>
> Q. And what was in terms of IQ what was [JW]'s score?
> A. Her overall score was a 66 which is significantly below average and placed her in the mental disability range mild.
>
> Q. So this cognitive assessment we could liken it to an IQ test?
>
> A. In other places they call it that, but the State of Louisiana prefers to use the word cognitive test.
>
> Q. And 66 was her score?
>
> A. And 66 was her score.

Defense counsel established on cross-examination that the scores on the academic achievement tests did not correlate to an IQ scale. The evaluator distinguished the achievement tests from the "IQ test" that are administered. Defense counsel then pressed on whether Louisiana gave an IQ test. She responded that it was "an intelligence test," but "I don't know that we have an IQ test per se."

**B. First Motion for Acquittal**

After the State rested, defense counsel invoked Louisiana Code of Criminal Procedure Art. 778 and requested a judgment of acquittal on the grounds that no IQ test had been admitted into evidence. The prosecutor responded that the evaluator testified about the

Page 5 of 19

cognitive assessment performed by the psychologist that showed a score of 66 and was said to be the same as what other states call an IQ test. The trial judge denied the motion, and the defense presented its case.

### C. Defense Evidence

JW's mother had testified during the State's case that she once walked in and caught JW acting inappropriately with a male relative. That relative testified for the defense that the incident never occurred and that JW had made a false accusation that he and one of his friends were "messing around with her." Another defense witness testified that she trusted Petitioner and had allowed him to babysit her daughter. Petitioner himself testified that he never had sex with JW, and his troubles began after he reported finding the girl nude with Vernon Mullins.

### D. Renewed Motion for Acquittal Granted

After the defense rested, the court took a recess for the attorneys to review the proposed jury charges. When the court went back on the record, the trial judge stated that he had let counsel know during the break that he was reconsidering his ruling on the earlier motion. Defense counsel then repeated that he sought a motion for judgment of acquittal under Article 778 on the grounds there was no evidence of an IQ test to establish a mental infirmity. The State responded that the testimony about the cognitive assessment satisfied the statute and that there was no jurisprudence that required a particular kind of test to establish mental infirmity. The judge stated that he had found cases where the State satisfied

its burden by presenting a mental health professional who conducted an IQ test. He continued:

> But I do not believe that this assessment that was done - - in fact the witness testified that Louisiana schools do not conduct an IQ test. And I take the law as I find it. It may not be what I want to do but it is what I, in my opinion, have to do. I'm going to grant the gentleman's motion. In my opinion, the State has not proven a mental infirmity which means a person with an intelligence quotient of 70 or lower.

The judge then said that he was going to "cause the jury to be dismissed."

### E. Mistrial Granted

The defense requested the judgment of acquittal based on La. C. Cr. P. art. 778, but that article applies only in a bench trial.[1] Louisiana law is well settled that a judge may not grant a "directed verdict" in a criminal jury trial. State v. Parfait, 693 So.2d 1232, 1242 (La. App. 1st Cir. 1997).

In a jury trial, a motion for judgment of acquittal is governed by La. C. Cr. P. art. 821, which allows the defendant to make the motion "following the verdict."[2] The court may

---

[1] Article 778 states: "In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction."

[2] Article 821 states:

"A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.

B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.

grant the motion if it finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. If the evidence, viewed in a light most favorable to the State, supports only a conviction for a lesser included responsive offense, the court may modify the verdict and render a judgment of conviction of the lesser offense. If the court grants the post-verdict judgment of acquittal or modifies the verdict, Article 821(D) provides that the State may seek review from the appellate court. If the appellate court finds error, it may reinstate the jury's verdict. See, e.g., State v. Jones, 983 So.2d 95 (La. 2008). Reinstatement of the verdict on appeal, unlike a second trial, does not offend the Double Jeopardy Clause. U.S. v. Wilson, 95 S.Ct. 1013 (1975).

Several days after the jury was dismissed, the attorneys reconvened before the court. The judge announced, without explanation, "I had made an erroneous ruling in jury trial regarding this case so I'm declaring a mistrial." Defense counsel objected that double jeopardy would apply and that a mistrial was not appropriate. The court agreed with the

---

C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.

D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.

E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense."

State that a mistrial was appropriate under Article 775(5) because, after the jury was dismissed, it was "physically impossible to proceed with the trial in conformity with law." The judge issued a written opinion the next day that did not shed any more light on why he believed the acquittal was wrong. The one-page order recited the procedural and substantive grounds on which the motion for acquittal was made, stated that it had been granted, and concluded, "Later, the Court realized its mistake and declared the subject mistrial."

**Standard of Review**

Most habeas petitions by state prisoners are presented pursuant to 28 U.S.C. § 2254, which requires the federal court deny relief on a claim of this kind unless the state court adjudication of the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1).

Petitioner in this case is proceeding as a pretrial detainee with a petition governed by § 2241. That statute does not contain a standard of review, but the Fifth Circuit and several other circuit courts have held that § 2254(d) deference never applies to habeas petitions brought by pretrial detainees under § 2241. Martinez v. Caldwell, 644 F.3rd 238, 242 (5th Cir. 2011); Christian v. Wellington, 739 F.3rd 294, 298 (6th Cir. 2014)(agreeing with the First, Fifth, Ninth, and Tenth Circuits on the issue). Thus, although the Petitioner has fully litigated his double jeopardy defense in the state court system, this court conducts a de novo review of the state court proceedings. Id.[3]

---

[3] The court brought this issue to the attention of the parties and invited them to address it in their briefs (Doc. 5), but neither side suggested a different standard should

**Double Jeopardy**

    **A. Supreme Court Jurisprudence**

The double jeopardy prohibition of the Fifth Amendment is a fundamental right that applies to the states through the Fourteenth Amendment. Benton v. Maryland, 89 S.Ct. 2056, 2062 (1969). The underlying idea behind the prohibition "is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Id. at 2063, quoting Green v. U.S., 78 S.Ct. 221, 223 (1957).

The Supreme Court has long "recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is 'based upon an egregiously erroneous foundation.'" Evans v. Michigan, 133 S.Ct. 1069, 1074 (2013), quoting Fong Foo v. U.S., 82 S.Ct. 671 (1962). The Court has "defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." Evans, 133 S.Ct. at 1074-75. Thus, an acquittal includes a ruling by the court that the evidence is insufficient to convict. Id.

The Supreme Court has held that double jeopardy applies to a judge-ordered acquittal even when the judge was dead wrong. In Fong Foo the federal trial judge directed the jury

---

apply. The parties were also directed to brief any procedural issues or defenses. None were raised.

to return verdicts of acquittal after only seven days and a few witnesses in what was expected to be a long and complicated trial. His action was based on supposed improper conduct by the prosecutor and lack of credibility in the prosecution witnesses thus far. The prosecution petitioned the court of appeals to vacate the judgment of acquittal and have the case reassigned for trial. The appellate court granted the petition on the ground the trial judge was without power to direct the judgment in question. The Supreme Court held that double jeopardy was violated when the appellate court directed that the defendants be tried again. The Court noted that the defendants were tried under a valid indictment in a court with jurisdiction over them and the subject matter, and the case terminated with the entry of a judgment of acquittal. Even though the acquittal was based upon "an egregiously erroneous foundation" it was final and could not be reviewed without putting the defendants twice in jeopardy. Justice Clark dissented that the judgment of acquittal was null because the trial judge lacked authority to enter it.

  The Supreme Court has since applied this principle broadly and held that acquittals precluded retrial when an acquittal was premised upon an erroneous decision to exclude evidence,[4] a mistaken understanding of what evidence would suffice to sustain a conviction,[5] or a misconstruction of a statute.[6] The breadth of the approach is demonstrated by Evans v. Michigan, in which the state trial judge entered a directed verdict of acquittal based on his

---

[4] Sanabria v. U.S., 98 S.Ct. 2170 (1978).

[5] Smith v. Massachusetts, 125 S.Ct. 1129 (2005).

[6] Arizona v. Rumsey, 104 S.Ct. 2305 (1984).

view the prosecution had not provided sufficient evidence of a particular element of the crime. It turned out that the unproven element was not required at all. The Supreme Court (8-1) held that the judicial acquittal, even though based on a clearly erroneous construction of the law, barred retrial. The Court noted that its cases have defined an acquittal to encompass "any ruling" that the prosecution's proof is insufficient to establish criminal liability. There was "no question the trial court's ruling was wrong," but that was "of no moment." Evans, 133 S.Ct. at 1075. The acquittal barred retrial whether the court's evaluation of the evidence was correct or not, "and regardless of whether the court's decision flowed from an incorrect antecedent ruling of law." Id. at 1076.

The trial judge in Smith v. Massachusetts granted a mid-trial directed verdict on grounds that the prosecution did not approve that the gun used in the crime had a barrel shorter than 16 inches. The defense then put on its case, after which the prosecutor brought to the judge's attention state law precedent that showed the evidence regarding the length of the barrel was adequate. The judge agreed, announced that she was reversing her previous ruling, and submitted the count to the jury.

The Supreme Court held that this violated the Double Jeopardy Clause, which "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict." Smith, 125 S.Ct. at 1133. The Court stated that "[o]ur cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment

of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." Id. at 1134.

### B. The State Court Decision

A three-judge panel of the Louisiana Third Circuit Court of Appeal looked to the federal precedents and unanimously determined that the trial court's grant of acquittal was based on its assessment of the sufficiency of the evidence so, once entered, the judgment was final and barred a second trial. The Supreme Court of Louisiana disagreed in a 5-2 decision that concluded this case presented distinct circumstances that set it apart from the federal cases. The court held that this case was different because the Louisiana trial judge lacked any authority under state law to grant a judgment of acquittal before the jury returned its verdict. The federal and state judges in Evans and the other cited decisions all had authority under Federal Rule of Civil Procedure 29 or similar state laws to grant a motion of acquittal after the close of the prosecution's case.

The Supreme Court of Louisiana noted the long history of legislation and jurisprudence in this state that have prohibited, with the exception of a few years decades ago, a trial judge from granting a judgment of acquittal before the jury returned a verdict. Because the trial judge's actions here were clearly prohibited by state law, the court characterized his ruling as ultra vires, being beyond the authority granted to a district judge in a criminal jury trial, so that it was appropriate to grant a mistrial when that error was recognized, and a second trial was not barred. Chief Justice Johnson and Justice Weimer

dissented in separate opinions and argued that authorities such as Fong Foo and Evans make clear that once an acquittal is granted, even if made in error, it is final.[7]

**C. Analysis**

The undersigned concludes that the trial judge's acquittal in this case bars a second trial no matter whether the judge was mistaken regarding his assessment of the adequacy of the evidence or whether he was in violation of state procedural law when he entered the acquittal. It is no more ultra vires for a trial judge to violate a procedural rule than to invent new elements of a crime or otherwise violate substantive law, and the Supreme Court has rejected a second trial in those situations. The Supreme Court of Louisiana focused on the lack of authorization in state law for the judge's actions, but the federal and state judges in the Supreme Court jurisprudence were no more lacking in authorization for their patently incorrect substantive decisions and, as noted in the cited law review article, "It would be strange to prefer substantively erroneous but procedurally permissible acquittals over factually accurate but statutorily unauthorized acquittals." Durham, 89 Tul. L. Rev. at 918.

The Supreme Court said in Smith v. Massachusetts that its cases have made a "single exception" to the principle that acquittal by a judge precludes a second trial. This case does not present that exception. And the state court's characterization of the acquittal as ultra vires due to its procedural impropriety does not change the result. In Smith, the state court

---

[7]The majority decision has been criticized in a student-written law review article. Andrew W. Durham, Recent Development, State v. Davenport: The Louisiana Supreme Court Ignores Federal Constitutional Double Jeopardy Protections in Favor of Criminal Reprosecution, 89 Tul. L. Rev. 909 (2015).

attempted to distinguish the acquittal at issue by characterizing it as a legal finding rather than a factual determination, but the Court stated that "Massachusetts' characterization of the required finding ... is, 'as a matter of double jeopardy law, ... not binding on us.'" Smith, 125 S.Ct. at 1135, quoting Smalis v. Pennsylvania, 106 S.Ct. 1745, 1748 n. 5 (1986). The Court had stated in Smalis that "the Pennsylvania Supreme Court's characterization, as a matter of double jeopardy law, of an order granting a demurrer is not binding on us." Id. The undersigned finds that the trial judge's ruling in this case, for double jeopardy purposes, was substantively an acquittal based on a judicial finding that the evidence was insufficient to prove guilt. Even if that decision was based upon an egregiously erroneous procedural foundation, it was a verdict of acquittal that bars a second trial.

The Supreme Court noted in Evans v. Michigan that sovereigns are not powerless to "prevent this sort of situation," because nothing obligates a jurisdiction to afford its trial courts the power to grant a mid-trial acquittal. The Court said there were at least two states, Nevada and Louisiana, that disallow the practice. "But having chosen to vest its courts with the power to grant mid-trial acquittals, the State must bear the corresponding risk that some acquittals will be granted in error." Evans, 133 S.Ct. at 1081.

This case presents the issue whether, if the State chooses not to vest its courts with the power to grant mid-trial acquittals, it must still bear the risk that a judge will violate the procedural law and nonetheless issue an acquittal. The undersigned concludes, based on the broad language in the Court's cases, that it does. The Court explained that states could prevent such situations by passing procedural laws, but it did not say that the violation of

such laws would insulate a substantive acquittal from the otherwise applicable double jeopardy principles. A state could similarly pass legislation that put an extremely heavy burden on a defendant to obtain a mid-trial acquittal. There is no question that if a trial judge violated that substantive command of state law, her acquittal would nonetheless bar a second trial. A mistake of procedural law that is antecedent to an acquittal should not be treated differently.

Nevada has been cited as the state that joins Louisiana in barring a trial judge from granting a directed verdict in a criminal jury case. Nevada Revised Statute 175.381 allows the judge, after evidence on either side is closed, to advise the jury to acquit the defendant, but the jury is not bound by that advice. There is no provision for the judge to grant a directed verdict of acquittal. Trial judges in Nevada have nonetheless overstepped their authority on occasion, as did the trial judge in this case, and granted a directed verdict based on insufficient evidence. The Nevada Supreme Court has at least three times held that double jeopardy bars a second trial despite the trial judge's lack of authority to grant an acquittal.

The leading case is State v. Combs, 116 Nev. 1178 (2000). The Supreme Court of Nevada first noted that under N.R.S. 175.381 the defendant's motion to dismiss at the close of the State's case was not properly made and should not have been granted by the trial judge. But, "[d]espite the obvious error of the district court," the defendant could not be retried on the dismissed count because it would violate the Double Jeopardy Clause. The Nevada court cited U.S. v. Scott, 98 S.Ct. 2187 (1978) for the principle that to permit a

second trial after an acquittal, "however mistaken the acquittal may have been," would constitute double jeopardy.

The Supreme Court of Nevada applied this principle again in State v. Eighth Judicial District Court, 2012 WL 3252821 (Nev. 2012) (unpublished) when a trial court "clearly exceeded its authority" when it had "no authority to take the case from the jury and direct a verdict." The court stated that it could not afford the State relief "because the Double Jeopardy Clause precludes a second trial even though the district court clearly erred in granting the directed verdict."

Another trial judge granted a mid-trial dismissal based on insufficient evidence in State v. Walker, 2014 WL 3764644 (Nev. 2014) (unpublished) even though "no Nevada statute authorizes mid-trial dismissals in criminal cases." The court looked to its own Combs decision as well as Evans v. Michigan and Smith v. Massachusetts. It continued to follow the rule that the Double Jeopardy Clause bars a second trial when a trial judge acquits based on insufficient evidence even though state law does not allow a trial judge to grant such relief. The undersigned agrees with the approach taken by the Supreme Court of Nevada in these similar cases.

**Conclusion**

The trial judge's ruling in this case, for double jeopardy purposes, was substantively an acquittal based on a judicial finding that the evidence was insufficient to prove guilt. That remains true whether or not the ruling was procedurally allowed by state law and even if the state courts describe the ruling as ultra vires. Even if the acquittal was based upon an

egregiously erroneous procedural foundation, it was a verdict of acquittal that bars a second trial. The State should be barred from further prosecuting Petitioner for the aggravated rape charge of which he was acquitted, and he should be released from custody unless the State has other authority to keep him in custody.

Accordingly,

**IT IS RECOMMENDED** that Morris Davenport, Jr.'s petition for relief pursuant to 28 U.S.C. § 2241 be granted and that the State of Louisiana be barred from subjecting him to a second trial for the aggravated rape charge on which he was previously acquitted. The State should be ordered to release Davenport immediately if the District Judge adopts this recommendation and the State has no other authority to detain Davenport.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29th day of April, 2015.

Mark L. Hornsby
U.S. Magistrate Judge